**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

LEOPOLD RIOLA BARDAJI, Individually and on Behalf of All Others Similarly Situated

        Plaintiff,

    v.

MATCH GROUP, INC., SHARMISTHA DUBEY, BERNARD KIM, and GARY SWIDLER,

        Defendants.

Case No. 1:23-cv-0245-MN

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

OF COUNSEL:

Michael Carlinsky
Jesse Bernstein
Brenna Nelinson
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
michaelcarlinsky@quinnemanuel.com
jessebernstein@quinnemanuel.com
brennanelinson@quinnemanuel.com

December 6, 2023

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Kenneth J. Nachbar (#2067)
Lauren K. Neal (#5940)
Emily C. Friedman (#7054)
1201 North Market Street
Wilmington Delaware 19801
(302) 658-9200
knachbar@morrisnichols.com
lneal@morrisnichols.com
efriedman@morrisnichols.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ........................................................................1

II.     PLAINTIFF DOES NOT PLEAD ANY ACTIONABLE MISSTATEMENTS.................2

        A.      Plaintiff Does Not Plead Misstatements Concerning Hyperconnect ......................2

        B.      Plaintiff Does Not Plead Misstatements Concerning Tinder Initiatives ................4

III.    PLAINTIFF DOES NOT PLEAD SCIENTER................................................................7

IV.     PLAINTIFF DOES NOT PLEAD LOSS CAUSATION ..................................................10

V.      CONCLUSION..................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Advance Auto Parts, Inc., Sec. Litig.*,
2020 WL 599543 (D. Del. Feb. 7, 2020)................................................................4, 9

*In re Aetna Sec. Litig.*,
34 F. Supp. 2d 935 (E.D. Pa. 1999) ........................................................................4

*Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*,
532 F. Supp. 3d 189 (E.D. Pa. 2021) ...................................................................3, 8

*Bartesch v. Cook*,
941 F. Supp. 2d 501 (D. Del. 2013)......................................................................2, 9

*California Pub. Emps. Ret. Sys. v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004)................................................................................3, 6

*In re Celgene Corp. Sec. Litig.*,
2019 WL 6909463 (D.N.J. Dec. 19, 2019).................................................................9

*City of Warren Police and Fire Ret. Sys. v. Prudential Fin. Inc.*,
70 F.4th 668 (3d Cir. 2023) ..................................................................................7

*In re Grand Canyon Educ., Inc. Sec. Litig.*,
2021 WL 3491779 (D. Del. Aug. 9, 2021) ...............................................................10

*GSC Partners CDO Fund v. Washington*,
368 F.3d 228 (3d Cir. 2004)..................................................................................9

*Hall v. Johnson & Johnson*,
2019 WL 7207491 (D.N.J. Dec. 27, 2019)................................................................2

*Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Exp. Co.*,
724 F. Supp. 2d 447 (S.D.N.Y. 2010) *aff'd*, 430 F. App'x 63 (2d Cir. 2011)...........................5

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
2015 WL 4036179 (D. Del. Jul. 1, 2015) ................................................................6

*Olson v. Ako*,
724 F. App'x 160 (3d Cir. 2018) ............................................................................3

*In re PTC Therapeutics, Inc. Sec. Litig.*,
2017 WL 3705801 (D.N.J. Aug. 28, 2017) ...............................................................8

*Rahman v. Kid Brands, Inc.*,
    736 F.3d 237 (3d Cir. 2013)..........................................................................................8, 9

*Schiro v. Cemex, S.A.B. de C.V.*,
    396 F. Supp. 3d 283 (S.D.N.Y. 2019)..................................................................................8

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
    351 F. Supp. 3d 874 (E.D. Pa. 2018) ..................................................................................8

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
    2000 WL 1727377 (N.D. Cal. Sept. 29, 2000) ...................................................................4

*Sylebra Capital Partners Master Fund Ltd. v. Everbridge, Inc.*,
    2023 WL 3549506 (C.D. Cal. May 9, 2023) .......................................................................3

*Tanaskovic v. Realogy Holdings Corp.*,
    2021 WL 211049 (D.N.J. Jan. 21, 2021)..............................................................................4

*Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*,
    176 F. Supp. 3d 387 (D. Del. 2016)......................................................................................9

*In re Viropharma Inc. Sec. Litig.*,
    21 F. Supp. 3d 458 (E.D. Pa. 2014) .....................................................................................9

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
    29 F.4th 611 (9th Cir. 2022) .............................................................................................6, 7

## I.   PRELIMINARY STATEMENT

Plaintiff's Answering Brief ("Opposition" or "Opp.") ignores Defendants' arguments and Defendants' disclosures.  Plaintiff argues that MGI concealed that the Hyperconnect integration was being poorly executed, but does not address Defendants' disclosure—on the ***first day of the Class Period***—that Hyperconnect fell short of revenue expectations and "faced delays in rolling out certain product initiatives."  Plaintiff argues that Defendants misled investors about adoption rates for Explore, but glosses over the fact that Plaintiff's own FEs ***do not dispute*** the adoption rates.  Plaintiff argues that it was misleading for Defendants to discuss Coins when it was a "prototype," but do not engage with Defendants' disclosure that MGI's plan was to "test [Coins] out, learn it, refine it, work out the kinks."  Plaintiff argues that Defendants misled investors in the fall of 2022 regarding Tinder's execution improvement, but ignores that Tinder's Q4 2022 results were precisely what Defendants projected they would be earlier in the year.

Nor does the Opposition address the fact that Plaintiff's theory of fraud fundamentally makes no sense.  The Opposition fails to point to a single fact Defendants knew at the time of the alleged misrepresentations that was not disclosed to investors.  Indeed, Plaintiff does not address Defendants' numerous (and timely) disclosures of negative information throughout the Class Period, nor does Plaintiff address Defendants' extensive risk disclosures.  And Plaintiff does not explain why Defendants would have ***increased*** their stock holdings if they were engaged in a fraudulent scheme that was bound to be revealed.

Finally, the Opposition confirms the "corrective disclosures" were a combination of information unrelated to the alleged misrepresentations and the materialization of ***known*** risks previously disclosed to investors, neither of which satisfy Plaintiff's loss causation requirement.

The Complaint should be dismissed with prejudice in its entirety.

1

## II.    PLAINTIFF DOES NOT PLEAD ANY ACTIONABLE MISSTATEMENTS

### A.    Plaintiff Does Not Plead Misstatements Concerning Hyperconnect

Plaintiff argues that statements regarding the Hyperconnect integration were false because former employees—who were not involved with the integration at the time of the alleged misstatements—allegedly took issue with how that integration was managed.[1]

*First*, Plaintiff argues Defendants failed to disclose that Hyperconnect was underperforming and had not been sufficiently integrated, Opp. 2-4, but fails to engage with Defendants' disclosures that Hyperconnect's revenue was "below our expected range," Br. 8, 10, "much remains to be done at Hyperconnect," *id.* at 4, and it had yet to be integrated into MGI's Plenty of Fish and Tinder apps during the Class Period, *id.*  Plaintiff's alleged misstatements and omissions are thus "contradicted by [MGI's] public disclosures and, therefore, there can be no Section 10(b) claim." *Bartesch v. Cook*, 941 F. Supp. 2d 501, 508 (D. Del. 2013).

*Second*, Plaintiff argues that Defendants "fail to wrestle with salient facts" from FEs 1 and 2, Opp. 4, but none of those FE reports contradict Defendants' statements.  Indeed, it is Plaintiff that "fails to wrestle" with the salient fact that purported issues at (or prior to) the time the Hyperconnect deal closed in June 2021 say nothing about the status of the integration ***months later***. Br. 8.[2]  Plaintiff also fails to meaningfully wrestle with its concession that Hyperconnect was integrated into three of MGI's brands, arguing that those were MGI's "smallest" brands, but this concession dooms Plaintiff's allegation that no integration was occurring.  Opp. 3, 6.[3]

---

[1] Internal quotations and citations omitted and emphasis added unless otherwise noted.  Undefined terms have the same meaning as in Defendants' Opening Brief ("Br.").

[2] As Defendants argued, Br. 17-18, Plaintiff's former employee allegations neither "meet the reliability standards necessary to be credited" nor contradict Defendants' statements if credited.

[3] It also renders *Hall v. Johnson & Johnson*, which involved "intentionally deficient" "quality assurance procedures," inapposite.  2019 WL 7207491, at *16 (D.N.J. Dec. 27, 2019).

2

Further, vague complaints, including Hyperconnect's supposed lack of "strong strategic guidance" and focus on "metaverse programs," Opp. 3-4, are not "inconsistent with [MGI's] allegedly false and misleading statements." *California Pub. Emps. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 150, 155 (3d Cir. 2004); Br. 8-9. Nor does Plaintiff's allegation that Dubey was fired due to underperformance at Hyperconnect support falsity, Opp. 4, because, even if true—it is not and FE 2 provides no basis for his allegation—MGI disclosed Hyperconnect's underperformance.

*Third*, Plaintiff incorrectly argues opinions must begin with "I think." Opp. 5. Plaintiff's own authority cited elsewhere proves otherwise. *See Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 225 (E.D. Pa. 2021) (statement "we are confident" no laws were violated constitutes an opinion). Defendants' statements concerning their views and "outlook," Br. 8-9, are all opinions. Plaintiff does not allege those opinions were not subjectively held, only that certain FEs held opposing opinions. This does not suffice. Br. 9.

*Fourth*, the statements about Hyperconnect are forward looking and do not represent "then-existing facts," Opp. 5, because "integration . . . is not an instantaneous process" and statements about "progress 'down the path' of 'integration' are insufficiently beyond the mere declaration of a long-term goal." *Sylebra Capital Partners Master Fund Ltd. v. Everbridge, Inc.*, 2023 WL 3549506, at *7 (C.D. Cal. May 9, 2023). In a footnote, Plaintiff argues for the first time that MGI's risk disclosures are "themselves, securities fraud," Opp. 5 & n.7, but the Complaint "may not be amended by the briefs in opposition to a motion to dismiss." *Olson v. Ako*, 724 F. App'x 160, 166 (3d Cir. 2018). And Plaintiff does not explain how any risks had "already come to fruition." Opp. 5 & n.7.[4]

---

[4] Plaintiff's argument that Defendants' statements in paragraphs 107 and 109 were unaccompanied by meaningful cautionary language is irrelevant because those statements are still protected by the

*Finally*, Plaintiff ignores, Opp. 5-6, that statements such as "we continue to make great, great progress," ¶ 100, are classic puffery as they are "too vague and general to actually convey any relevant information." *Tanaskovic v. Realogy Holdings Corp.*, 2021 WL 211049, at *20 (D.N.J. Jan. 21, 2021); Br. 9-10.[5]

### B.    **Plaintiff Does Not Plead Misstatements Concerning Tinder Initiatives**

Plaintiff argues Defendants misled investors about the progress of the Tinder initiatives, Opp. 6-12, but ignores Defendants' myriad disclosures:  that Coins was "currently testing" and "not really a 2022 revenue item," and that "revenue optimization" from Explore would happen "over time."  Br. 5, 12.  Plaintiff cannot overcome these disclosures.

*First*, Plaintiff ignores—and therefore waives any response—that most of Defendants' statements about the Tinder initiatives, including MGI's revenue projections, Opp. 10, are puffery, opinions, or forward-looking and inactionable because they were accompanied by meaningful cautionary language that "the size and level of engagement of our user base may decrease" and that failure to "keep up with changes in technology and user preferences . . . could adversely affect our business," Br. 12-13.  Even if not waived, Plaintiff provides no explanation for how the purported opinions of former employees—such as that it was "obvious" Explore would not succeed—constitute anything more than "facts cutting the other way." *Id*.

*Second*, the Opposition concedes that the "adoption rates" disclosed by Defendants are a

---

bespeaks caution doctrine. *See In re Splash Tech. Holdings, Inc. Sec. Litig*., 2000 WL 1727377, at *10 (N.D. Cal. Sept. 29, 2000) (bespeaks caution doctrine protects oral forward-looking statements when cautionary statements were in SEC filings).  Regardless, those statements are not false and are inactionable puffery.  Br. 9-10.

[5] *In re Advance Auto Parts, Inc., Sec. Litig*., 2020 WL 599543, at *4 n. 2 (D. Del. Feb. 7, 2020) involved a statement about the "progress" of a company's sales ***growth*** while failing to disclose that sales were "consistently trending down." *In re Aetna Sec. Litig*., 34 F. Supp. 2d 935, 944 (E.D. Pa. 1999) described a completed, not ongoing, integration.

different metric from the supposed "engagement rates" relied upon by Plaintiff to demonstrate "falsity." *See* Opp. 8. Plaintiff thus cannot explain why statements about *adoption*, which represent the majority of the alleged Explore misrepresentations, *e.g.*, ¶¶ 121, 124, 128, 131, are rendered false by FE reports about *engagement*, *see* Opp. 8-9, because Plaintiff concedes that *none* of the FEs dispute the adoption rates disclosed by Defendants.[6]

*Third*, even for statements regarding engagement, reports that Explore was a "dud," "had a negligible effect on user engagement," and "nine months after rollout, only five percent of Tinder users were engaging with the feature," Opp. 7-8, do not demonstrate *contemporaneous* falsity. Plaintiff concedes that its real argument is simply that if engagement was five percent *nine months after launch* "it is reasonable to infer" that engagement was similarly low months earlier at the time of the alleged misstatements. Br. 12; Opp. 8 & n.13. Plaintiff provides no basis for that speculation, and it is telling that despite alleging "constant monitoring and internal distribution of comparative user engagement," Opp. 8 n.13, none of Plaintiff's FEs allege what the engagement numbers were at the time of the alleged misrepresentations. *Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Exp. Co.*, 724 F. Supp. 2d 447, 462 (S.D.N.Y. 2010) ("[I]f 'detailed' reports were circulated . . . [the FEs] should be able to identify the" contradictory information and when Defendants received it), *aff'd*, 430 F. App'x 63 (2d Cir. 2011).

Plaintiff also argues that the "temporal proximity" between the May 3 statement that "Tinder Explore *adoption levels* continue to be high" and the August 3 statement that "Tinder did not deliver on its product roadmap" supports falsity. Opp. 9. But the August 3 reflection has no bearing on Explore adoption levels months earlier. Indeed, Plaintiff ignores Defendants'

---

[6] Plaintiff argues adoption is a "meaningless metric," Opp. 8, but this is absent from the Complaint, and Plaintiff does not explain how it would be misleading given Defendants' disclosure that the hope was adoption would lead to "increase[d] engagement." ¶ 117.

disclosure that while MGI was seeing "high" adoption rates, revenue would ultimately derive from "increase[d] engagement and reactivation." ¶ 117. Regardless, this speculative argument is insufficient. *See Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 621 (9th Cir. 2022) (proximity between July statement and August disclosure insufficient to establish falsity).

*Fourth*, Plaintiff alleges initial user reaction to Coins was "baffled to negative," Opp. 10, but does not explain how that rendered Defendants' statements false when Defendants' disclosed that "the plan for 2022" was to "work out the kinks." Br. 12. Similarly uncompelling is FE 2's "claim" that Coins was "shelved," Opp. 10, because the basis for this assertion is that he "heard nothing further" about Coins. ¶ 88. But FE 2—who did not work at Tinder—does not allege he was involved in Coins' day-to-day development such that him hearing nothing further suggests it was "shelved" as opposed to the Tinder team working out initial kinks. *See OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 2015 WL 4036179, at *3 (D. Del. Jul. 1, 2015) (rejecting FE allegations "lacking detail and with no corroboration"). Indeed, Plaintiff's theory that Defendants were "hoping that reality would catch up to their fiction," Opp. 18, makes no sense if Coins had already been "shelved." Nor does FE 4's alleged opinion that Coins was not a "viable, usable product in July 2022," suffice, Opp. 10, since FE 4 does not dispute that, as of the alleged misrepresentations, Coins was on track to be released in the summer of 2022, as represented.

*Fifth*, Plaintiff argues that Defendants made false statements regarding Tinder's product roadmap because Defendants later disclosed that they experienced issues in the first half of the year. Opp. 10-11. But arguments that Defendants turned out to be wrong are classic fraud by hindsight. *See Chubb*, 394 F.3d at 158. Plaintiff again suggests that the temporal proximity between Defendants' statements supports falsity, Opp. 11, but "without more, temporal proximity alone does not satisfy the particularity requirements of Rule 9(b)." *Twitter*, 29 F.4th at 621. This

is particularly true here: forward-looking predictions that a company is "largely on track," ¶ 130, with a plan is not a guarantee that it will happen, nor does it mean there will be no "kinks" to work out, particularly where Defendants disclosed there were, ¶ 118.[7]

*Finally*, Plaintiff argues that Defendants' statements that Tinder was improving execution on its product roadmap for the second half of 2022 are false because Defendants disclosed in January 2023 that MGI's revenue shortfall "resulted from weaker-than-expected product execution at Tinder, the effects of which became more pronounced as the year progressed."[8] Opp. 11-12. But Defendants cautioned investors in the very statements Plaintiffs allege as misleading that it would "take some time" for improved product execution "to play through into full financial results." Br. 6. Further, Plaintiff ignores that these statements are inactionable forward-looking opinions, *id.* at 13-14, and that, as disclosed to investors, MGI's Q4 2022 revenue was directly in line with its Q4 2022 guidance. *Id.* at 14.

## III. PLAINTIFF DOES NOT PLEAD SCIENTER

*First*, Plaintiff argues that Defendants had access to information contradicting their public statements. Opp. 13-15. But FE 2's vague report about Hyperconnect's alleged "failure to add expected value," Opp. 13, is consistent with Defendants' disclosures that Hyperconnect underperformed. Br. 3-4. The public disclosure of Hyperconnect's underperformance also

---

[7] *City of Warren Police and Fire Ret. Sys. v. Prudential Fin. Inc.*, 70 F.4th 668 (3d Cir. 2023) is inapposite. There, the court found temporal proximity where the defendant assured investors about a company's normal "mortality experience" where eight weeks later the company took a $208 million reserve charge as a result of the company's negative mortality experience.

[8] Plaintiff argues "financial" does not appear in the disclosure about the "effects" of "product execution," Opp. 6 & n.11, but the disclosure addressed financial results, in particular, "Tinder's revenue shortfall." Br. 13-14. And that is the only plausible reading given Defendants' contemporaneous statement that "we're really pleased with the strides the team has made over the last 6 months in improving on product execution" and that "Tinder saw a significant increase in the number of product features it delivered compared to the first half of 2022." Ex. L at 3, 8.

undermines any inference of scienter that could be drawn from Dubey's alleged termination since holding executives responsible for publicly disclosed underperformance does not raise an inference of scienter. *See Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 303 (S.D.N.Y. 2019). Other FE reports suggest Defendants' lack of involvement in the Hyperconnect integration, undermining scienter. ¶¶ 53, 76 (Dubey "delegated" integration process); Opp. 13.

Regarding the Tinder initiatives, Plaintiff argues that Defendant Kim knew user engagement for Explore was five percent, but the Complaint alleges that Kim—who made no statements about Explore—learned this *after* any alleged false statement about Explore. Br. 16. Plaintiff also argues that allegedly negative initial reactions in certain test markets to Coins, that the Coins interface was "a little too busy," FE 2's view that Explore was a "dud," and that Explore engagement was "monitored internally" each support scienter, Opp. 14-15, but fails to allege Defendants specifically had access to that information or how it contradicts any statements.

Similarly uncompelling is Plaintiff's argument that Defendants' own allegedly false statements concerning the level of adoption and engagement with Explore suggest that they had access to contradictory information. Opp. 16. Indeed, under Plaintiff's theory, every executive would possess the requisite scienter every time a plaintiff alleged statements to be false.[9]

*Second*, Plaintiff cannot establish that it is entitled to a core operations inference. Opp. 16-17. Plaintiff's argument that the core operations inference applies because Tinder comprised over half of MGI's revenue is unavailing. Br. 15. More fundamentally, Plaintiff fails to identify any

---

[9] Plaintiff's cases are inapposite. Opp. 16 n.18 (citing *Energy Transfer LP*, 532 F. Supp. 3d at 228 (timing proffered by defendant "was not even a possibility given the number of . . . construction projects that needed to be completed at that time"); *SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 906 (E.D. Pa. 2018) (defendants had reports explicitly contradicting statements); *In re PTC Therapeutics, Inc. Sec. Litig.*, 2017 WL 3705801, at *16-17 (D.N.J. Aug. 28, 2017) (defendants had firsthand knowledge contradicting their statements)).

"specific information conveyed to management and related to the fraud," *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 246 (3d Cir. 2013), that was not disclosed to investors in real time, Br. 16-17, or that was not allegedly conveyed only *after* the alleged false statements were made.

Plaintiff also does not allege that Defendants were responding to pointed questions. Plaintiff relies on *Rahman* to avoid this requirement, *see* Opp. 17 & n.20, but *Rahman* expressly **declined** to find a core operations inference because defendants were not "responding to pointed inquiries from analysts during multiple conference calls that addressed" the alleged fraud. 736 F.3d at 246 (citing *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 269-70 (3d Cir. 2009)).

*Third*, none of Plaintiff's motive arguments support scienter, Opp. 17-18, but rather underscore that Plaintiff's motive allegations are those too general to contribute to scienter. *See GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004). Plaintiff repeats that Defendants "received millions of dollars" in compensation and were motivated to "preserve revenue," Opp. 17-18, but does not explain how these generic goals constitute a "***concrete and personal*** benefit." *Bartesch*, 941 F. Supp. 2d at 511.[10] Plaintiff dismisses Kim's stock purchases and MGI's stock repurchase, but has no response to Defendants' argument that these purchases are inconsistent with fraud because "a defendant would not sink his own ship," *Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 396 (D. Del. 2016); Br. 19, a principle recognized by Plaintiff's own authority, *Advanced Auto*, 2020 WL 599543, at *8, which found scienter despite increased stock holdings because, unlike here, the stock "was acquired automatically as part of an executive's compensation package," *id*.[11]

---

[10] *In re Celgene Corp. Sec. Litig.*, 2019 WL 6909463, at *21 (D.N.J. Dec. 19, 2019) dealt with performance-based compensation tied directly to the filing of an NDA for a new drug.

[11] *In re Viropharma Inc. Sec. Litig.*, is inapposite because there, unlike here, defendants sold stock that "support[ed] an inference of scienter." 21 F. Supp. 3d 458, 474 (E.D. Pa. 2014).

*Finally*, Plaintiff's "holistic" narrative fails because it ignores the disclosures Defendants made during the Class Period. Opp. 18; Br. 19-20. Faced with these disclosures, Plaintiff argues that Defendants ask this Court "to improperly construe the facts in their favor." Opp. 18. But it is Plaintiff who asks this Court to adopt a theory of scienter that "does not make a lot of sense." *In re Grand Canyon Educ., Inc. Sec. Litig.*, 2021 WL 3491779, at *17 (D. Del. Aug. 9, 2021) (scienter allegations that do not "make a whole lot of sense[,]" cannot be found "cogent").

## IV.    PLAINTIFF DOES NOT PLEAD LOSS CAUSATION

Recognizing that neither of the alleged corrective disclosures are adequate, Plaintiff argues it pled ***four*** distinct disclosures. Opp. 19-20. It did not, but Plaintiff's allegations are deficient regardless. MGI's disclosures in an August 2, 2022 letter and repeated during an investor call the next day were not corrective because Defendants disclosed that MGI was taking an impairment charge due to certain "FX impacts" and "the use of higher discount rates in the DCF calculations," not because of a failed integration. Br. 20.[12] Similarly, Defendants disclosed that MGI expected lower revenue growth in the second half of 2022 because of a "series of . . . less sexy, less notable initiatives," not Coins or Explore. Br. 5, 20. MGI's January 31, 2023 shareholder letter and related commentary in an earnings call the next day is similarly not corrective given that MGI had already disclosed it expected reduced growth, and results were in line with guidance. Br. 20; Opp. 20.

## V.    CONCLUSION

For the reasons discussed herein and in Defendants' Opening Brief, the Complaint should be dismissed with prejudice.

---

[12] Plaintiff improperly seeks judicial notice of a post-Class Period, September 7, 2023 conference transcript to suggest that the list of reasons provided for Hyperconnect's impairment were "non-exhaustive," but the document does not even mention Hyperconnect's impairment. Opp. 19.

OF COUNSEL:

Michael Carlinsky
Jesse Bernstein
Brenna Nelinson
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
michaelcarlinsky@quinnemanuel.com
jessebernstein@quinnemanuel.com
brennanelinson@quinnemanuel.com


December 6, 2023

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

*/s/ Lauren K. Neal*
Kenneth J. Nachbar (#2067)
Lauren K. Neal (#5940)
Emily C. Friedman (#7054)
1201 North Market Street
Wilmington Delaware 19801
(302) 658-9200
knachbar@morrisnichols.com
lneal@morrisnichols.com
efriedman@morrisnichols.com

*Attorneys for Defendants*