**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| LEOPOLD RIOLA BARDAJI, Individually and on Behalf of All Others Similarly Situated, <br><br>        Plaintiff, <br><br>     v. <br><br> MATCH GROUP, INC., SHARMISTHA DUBEY, and GARY SWIDLER, <br><br>        Defendants. | C.A. No. 1:23-cv-0245-MN |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION
TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT FOR
<u>VIOLATIONS OF THE FEDERAL SECURITIES LAWS</u>**

**TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ...................................................................................1

II.     NATURE AND STAGE OF THE PROCEEDINGS ....................................................2

III.    SUMMARY OF ARGUMENT ....................................................................................2

IV.     BACKGROUND ........................................................................................................3

        A.      Factual Background ........................................................................................3

        B.      Procedural Background....................................................................................5

V.      PLAINTIFF FAILS TO STATE A CLAIM UNDER THE EXCHANGE ACT ................5

        A.      Plaintiff Fails to Plead a Material Misrepresentation ...............................................6

                1.      Defendants Made No Misrepresentations About Explore ..........................6

                2.      Defendants Made No Misrepresentations About Coins............................9

                3.      General Statements That Features Were "On Track" Are
                        Inactionable....................................................................................12

        B.      Plaintiff Fails to Plead a Strong Inference of Scienter............................................13

                1.      Plaintiff Fails to Plead Conscious Misbehavior or Recklessness ..............13

                2.      Plaintiff Fails to Plead Motive and Opportunity.....................................17

                3.      Plaintiff's Scienter Theory Makes No Sense ...........................................18

        C.      Plaintiff Fails to Plead Loss Causation ................................................................19

VI.     CONCLUSION..........................................................................................................20

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Bartesch v. Cook*,
  941 F. Supp. 2d 501 (D. Del. 2013) .................................................................................10, 17

*Bd. of Trs. of City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*, 811 F.
  Supp. 2d 853 (S.D.N.Y. 2011), *aff'd* 475 F. App'x 353 (2d Cir. 2012) ..................................16

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004)...........................................................................................10, 11

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
  543 F. App'x 72 (2d Cir. 2013) ............................................................................................19

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*,
  70 F.4th 668 (3d Cir. 2023) ............................................................................................12, 13

*In re Digit. Island Sec. Litig.*,
  357 F.3d 322 (3d Cir. 2004)..................................................................................................13

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005).............................................................................................................19

*Fan v. StoneMor Partners LP*,
  927 F.3d 710 (3d Cir. 2019)..................................................................................................18

*Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*,
  336 F. Supp. 3d 196 (S.D.N.Y. 2018), *aff'd*, 779 F. App'x 69 (2d Cir. 2019)........................18

*Galati v. Commerce Bancorp, Inc.*,
  220 Fed. App'x. 97 (3d Cir. 2007)...........................................................................................8

*In re Grand Canyon Educ., Inc. Sec. Litig.*,
  2021 WL 3491779 (D. Del. Aug. 9, 2021) ............................................................................19

*GSC Partners CDO Fund v. Washington*,
  368 F.3d 228 (3d Cir. 2004)..................................................................................................13

*Institutional Inv. Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009).........................................................................................12, 13, 17

*Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*,
  724 F. Supp. 2d 447 (S.D.N.Y. 2010), *aff'd*, 430 F. App'x 63 (2d Cir. 2011)..........................8

*Long Miao v. Fanhua, Inc.*,
    442 F. Supp. 3d 774 (S.D.N.Y. 2020)....................................................................................12

*In re Loral Space & Comms. Ltd. Sec. Litig.*,
    2004 WL 376442 (S.D.N.Y. Feb. 27, 2004).....................................................................18, 19

*In re Lululemon Sec. Litig.*,
    14 F. Supp. 3d 553 (S.D.N.Y. 2014)..............................................................................12, 14

*Martin v. GNC Holdings, Inc.*,
    2017 WL 3974002 (W.D. Pa. Sept. 8, 2017), *aff'd*, 757 F. App'x 151 (3d Cir.
    2018) ...................................................................................................................................16

*Martin v. GNC Holdings, Inc.*,
    757 F. App'x 151 (3d Cir. 2018) .........................................................6, 13, 14, 16, 17

*In re Maxwell Techs., Inc. Sec. Litig.*,
    18 F. Supp. 3d 1023 (S.D. Cal. 2014)...................................................................................8

*In re NAHC, Inc. Sec. Litig.*,
    2001 WL 1241007 (E.D. Pa. Oct. 17, 2001), *aff'd*, 306 F.3d 1314 (3d Cir.
    2002) ...................................................................................................................................14

*In re NAHC, Inc. Sec. Litig.*,
    306 F.3d 1314 (3d Cir. 2002)..........................................................................................7, 9

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp.*,
    720 F. Supp. 2d 517 (D.N.J. 2010) ...............................................................................17, 18

*In re Newell Brands, Inc. Sec. Litig.*,
    837 F. App'x 869 (3d Cir. 2020) .........................................................................................6

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020) ............................................................................................19

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
    2015 WL 4036179 (D. Del. Jul. 1, 2015) ..........................................................................11

*Percoco v. Deckers Outdoor Corp.*,
    2013 WL 3584370 (D. Del. July 8, 2013) ..........................................................................16

*Rahman v. Kid Brands, Inc.*,
    736 F.3d 237 (3d Cir. 2013).............................................................................5, 6, 16, 17

*Roofer's Pension Fund v. Papa*,
    2018 WL 3601229 (D.N.J. July 27, 2018)..........................................................................17

iii

*Shenwick v. Twitter, Inc.*,
   282 F. Supp. 3d 1115 (N.D. Cal. 2017) ......................................................................8

*Tellabs, Inc. v. Makor Issues & Rts.*, Ltd.,
   551 U.S. 308 (2007).................................................................................................13

*Tung v. Bristol-Myers Squibb Co.*,
   2020 WL 5849220 (S.D.N.Y. Sept. 30, 2020)...........................................................7

*Tyler v. Liz Claiborne, Inc.*,
   814 F. Supp. 2d 323 (S.D.N.Y. 2011)......................................................................15

*Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*,
   176 F. Supp. 3d 387 (D. Del. 2016)..........................................................................18

*Wilson v. Bernstock*,
   195 F. Supp. 2d 619 (D.N.J. 2002) ..........................................................................18

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021) ..................................................................................11

## Statutes / Rules

15 USC § 78u-5(i)(1) ......................................................................................................9

Exchange Act Section 10(b) ......................................................................................2, 5, 6

Exchange Act Section 20(a)............................................................................................2, 6

Federal Rule of Civil Procedure 12(b)(6) ........................................................................2

Defendants Match Group, Inc. ("MGI" or the "Company"), Sharmistha Dubey, and Gary Swidler respectfully submit this Opening Brief in Support of Their Motion to Dismiss the Second Amended Class Action Complaint (D.I. 56, the "SAC").

## I.   <u>PRELIMINARY STATEMENT</u>

Plaintiff tries again to manufacture a securities fraud claim out of optimistic statements regarding Tinder's development of two new features, Explore and Coins.  In its disclosures to investors, MGI was careful to warn that the features were still being developed, the Company was still "work[ing] out the kinks," and 2022 would be a year of testing, development, and slow rollout of the features.  In fact, on the first day of the Class Period, MGI cautioned that Coins was not even a 2022 revenue item, a transparent disclosure it reiterated in the middle of the Class Period *before* any alleged corrective disclosures.  This is not how a company attempting to commit fraud acts, and Plaintiff's allegations again fail to state a claim for securities fraud.

*First*, despite Plaintiff's additions to the SAC, Plaintiff still fails to allege that Defendants made any materially misleading statements.  Despite the prior dismissal, Plaintiff still challenges statements like "[w]e're largely on track with the initiatives," but such optimistic statements cannot be the basis for securities fraud.  Nor does Plaintiff allege sufficient facts to establish that statements regarding Explore's engagement rates were false at the time they were made, as not a single former employee—nor Plaintiff—identifies how engagement was measured or what the rate was at the time of any particular alleged misstatement.  Plaintiff similarly fails to allege with particularity facts establishing that Coins had been abandoned during the Class Period.  A handful of former employees identifying purported challenges with the features is not securities fraud.

*Second*, Plaintiff falls far short of establishing a strong inference of scienter, *i.e.*, one that is cogent and as plausible as non-fraudulent inferences.  Plaintiff still fails to allege with particularity any facts showing that Defendants knew a single one of their statements to investors

was false when made.  Nor does Plaintiff allege any cogent motive for Defendants to "mislead" investors—for a single quarter—before disclosing reduced revenue guidance.  Plaintiff does not, for example, allege that Defendants sold a single share of stock during that time.  To the contrary, MGI bought back stock in 2022.  And, far from seeking to mislead investors, Defendants repeatedly warned investors that the results of the Tinder feature initiatives were uncertain and unlikely to contribute to revenue in 2022.

*Third*, Plaintiff fails to adequately plead loss causation.  Plaintiff alleges that purportedly bad information regarding Coins and Explore—which Defendants had already disclosed were unlikely to drive revenue in 2022—were somehow the cause of MGI's reduced guidance in the second half of 2022.  However, because the disclosed cause of the guidance cut was *other* Tinder initiatives, Plaintiff cannot connect the alleged misstatements to any corresponding loss.

For each of the foregoing reasons, the SAC should be dismissed with prejudice.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

The Court previously dismissed Plaintiff's first amended complaint with leave to amend.  D.I. 52, 54.  Plaintiff filed the SAC on August 12, 2024, alleging two causes of action: (i) that MGI and the individual Defendants—Sharmistha Dubey and Gary Swidler—violated Section 10(b) of the Exchange Act and Rule 10b-5; and (ii) that Dubey and Swidler violated Section 20(a) of the Exchange Act.  This is Defendants' Opening Brief in Support of Their Motion to Dismiss the SAC.

## III.    SUMMARY OF ARGUMENT

1.    Plaintiff fails to adequately allege under Rules 12(b)(6) and 9(b) and the PSLRA at least three required elements of a Section 10(b) claim:  A material misrepresentation, scienter, and loss causation.  Therefore, the Court should dismiss Count I of the SAC.

2.    Because Plaintiff fails to plead a predicate Section 10(b) claim, Plaintiff's Section 20(a) control person claim fails.  Therefore, the Court should dismiss Count II of the SAC.

2

IV.    **BACKGROUND**

A.    **Factual Background**

MGI is an internet and technology holding company, which, through its portfolio companies, provides dating brands in the online dating category such as Tinder, Hinge, and OkCupid.  MGI's portfolio companies must continually adapt and innovate in response to the ever-changing dating landscape to stay competitive.  As relevant here, between 2021 and 2022, MGI and its portfolio company, Tinder, undertook new initiatives to better serve their users.

In the fall of 2021, Tinder disclosed two such initiatives:  (i) Explore, a hub within the Tinder app providing new interactive ways to use Tinder; and (ii) Coins, an in-app virtual currency that allows users to make purchases.  ¶ 7.[1]  Though optimistic that these features would attract users and increase engagement, Defendants cautioned that the failure to "keep up with changes in technology and user preferences . . . could adversely affect our business."  Ex. A at 18.

From the outset, Defendants disclosed the experimental and uncertain nature of both features.  On November 3, 2021, Dubey shared that "[virtual currency] is currently testing" and that the plan for 2022 was to "build all of this out, ***test it out, learn it, refine it, work out the kinks***."  Ex. B at 11, 12 (emphasis added).  Similarly, when asked whether Explore would accelerate revenue, Dubey explained that Explore was "new," had "only been out for a couple of weeks," and that any "revenue optimization opportunities" would occur "over time."  *Id.* at 6.  Dubey shared a similar sentiment with respect to Coins on February 2, 2022—the very first day of the Class Period—when she stated her hope that testing for Coins' ability to power virtual goods would occur "in the back half of the year, and hence, we're ***not counting on any sort of meaningful***

---

[1]   References to "¶ __" are to the SAC.  Exhibits are to the Declaration of Lauren Neal in Support of Defendants' Motion to Dismiss filed concurrently herewith.

***contribution to 2022 revenue***, it's more a 2023 and beyond revenue contribution." Ex. C at 13 (emphasis added).

Defendants continued to disclose that both Coins and Explore were in their infancy. On March 7, 2022, Swidler explained that while "there's lots of interesting things that [they're] going to be able to do with the Explore tab," they were "just in the very early innings." ¶ 84. On June 1, 2022, Swidler explained, "we think there's interesting things we can do in Explore that we're just starting to scratch the surface on." Ex. D at 6. With respect to Coins, he stated, "[w]e're still building that out. It really is not a 2022 revenue item. It's really a 2023 and beyond revenue item." *Id.*

In MGI's August 2, 2022 Shareholder Letter, MGI stated that "Tinder's current revenue growth expectations for the second half of the year are below our original expectations as a result of disappointing execution on several optimizations and new product initiatives." ¶ 94. MGI disclosed it expected "muted top-line growth in the second half of 2022" as well as "essentially flat" Q3 total revenue outlook year over year. Ex. E at 12. During MGI's earnings call the next day, Swidler explained that Coins was not responsible for the reduced expectations as "[t]here wasn't much, if anything, baked into the second half outlook around coins and virtual goods." Ex. F at 10. He explained further that the cause was from a series of "kind of less sexy, less notable initiatives," not Coins or Explore. *Id.*

On November 1, 2022, in MGI's Q3 2022 Shareholder Letter, Defendants projected that Tinder's direct revenue would be "relatively flat [year-over-year]" and between $780-$790 million for Q4 2022. Ex. G at 11. On January 31, 2023, MGI reported Q4 revenues of $786 million and disclosed flat year-over-year direct revenues from Tinder, both in-line with the November guidance. Ex. H at 2. The next day, Swidler again acknowledged that Tinder's revenue growth

4

"decelerated as the year went on," as a result of the previously disclosed execution issues in the first half of 2022, but expressed optimism about "the strides the [Tinder] team has made over the last 6 months in improving on product execution" and the "strong product road map for 2023[.]" Ex. I at 5, 8.

### B.    Procedural Background

On July 24, 2023, Plaintiff filed a first amended complaint in this action, alleging Defendants and MGI CEO Bernard Kim made misstatements regarding Explore, Coins, and Hyperconnect, Inc. ("Hyperconnect"), which MGI acquired in 2021. D.I. 34 (the "FAC"). Defendants moved to dismiss the FAC on September 22, 2023. D.I. 36-38. On June 27, 2024, Magistrate Judge Fallon recommended the Court grant the motion to dismiss (D.I. 52, the "R&R"), which the Court did on July 12, 2024 (D.I. 54) over Plaintiff's objection.

As relevant here, the Court found the statements regarding Explore and Coins to be inactionable puffery and not adequately alleged to be false. R&R at 13-15. The Court found "generic optimism about new product initiatives is not actionable" (*id.* at 13), statements about Explore's engagement were not rendered false by purported rates from months after the statements were made (*id.* at 14), the FAC "does not contain any facts suggesting that Defendants knew statements about expectations for Explore were false" (*id.*), and Defendants disclosed they were "working out the kinks" for Coins and did not expect it to contribute to 2022 revenue (*id.*).

Plaintiff filed the SAC on August 12, 2024. D.I. 56. The SAC abandons claims against MGI CEO Kim as well as all allegations relating to Hyperconnect.

## V.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE EXCHANGE ACT

To state a claim under Section 10(b) of the Exchange Act, Plaintiff must allege (i) a material misrepresentation or omission, (ii) reliance on such misrepresentation or omission, (iii) scienter, and (iv) loss causation. *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 242 (3d Cir.

2013). Because the claims are subject to the heightened pleading requirements of the PSLRA and Rule 9(b), the SAC must plead with particularity why the statement is fraudulent. *See In re Newell Brands, Inc. Sec. Litig.*, 837 F. App'x 869, 874 (3d Cir. 2020). Plaintiff must also establish a "strong inference" that each defendant acted with intent to deceive. *Martin v. GNC Holdings, Inc.*, 757 F. App'x 151, 153 (3d Cir. 2018). Plaintiff fails to adequately allege at least three required elements: a material misrepresentation, scienter, and loss causation. And Plaintiff's failure to plead a primary violation under 10(b) requires dismissal of Plaintiff's Section 20(a) control person claim as well. *Rahman*, 736 F.3d at 247.

### A.    **Plaintiff Fails to Plead a Material Misrepresentation**

#### 1.    Defendants Made No Misrepresentations About Explore

Plaintiff claims certain statements regarding Explore's adoption and engagement rates (#1, #3, #4, #8, #10)[2] were misleading because the feature was a "dud," and "user engagement percentages never exceeded single digits from the time of its launch in fall 2021 through June 2022." ¶ 75. The Court correctly rejected these allegations because each alleged statement was inactionable puffery or not supported by adequately alleged facts demonstrating falsity. R&R at 13-15. The allegations in the SAC fail for the same reasons.

*First*, Plaintiff does not adequately allege that any of the "adoption" or "engagement" statements were misleading because Plaintiff offers no explanation for how it, its FEs, or MGI are measuring engagement or adoption rates. And Plaintiff now admits *there is no industry standard definition or method of measuring engagement or adoption* and that the terms are "fuzzy." ¶¶ 53, 76. Without a universal method of measuring engagement or adoption, MGI's statements could not have been misleading, as there was no single way for investors to interpret the statistics. *See,*

---

[2] "Statement #__" refers to the numbered statements in Appendix A to this opening brief.

*e.g.*, *Tung v. Bristol-Myers Squibb Co.*, 2020 WL 5849220, at *7 (S.D.N.Y. Sept. 30, 2020) (Without "an industry standard definition . . . or indication that Defendants themselves agreed with Lead Plaintiffs' supposed definition before speaking, the statements are not actionable.").

*Second*, because Plaintiff does not allege that its FEs were using "engagement" in the same manner as MGI, Plaintiff does not—and cannot—allege that the figures disclosed by MGI (statements #1, #3, #4) were misleading.    Indeed, Plaintiff does not even dispute that approximately two-thirds of active users had adopted Explore between its launch and the alleged misstatements, which is what MGI represented.  The fact that some other undisclosed "engagement metric" (*e.g.*, daily active users) may be lower does not render the figures used by MGI misleading.

*Third*, even if Plaintiff were comparing apples-to-apples—it is not—Plaintiff's allegations still fail.  Plaintiff, relying on FE 2, alleges a 5% engagement rate in June of 2022 (¶ 49), but as the Court already recognized, such "allegations of falsity are based on a 5% engagement metric for Explore that was disclosed in the summer of 2022, months after these statements were made." R&R at 14.  The statements are thus not alleged to be "misleading at the time [they were] made." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002).  If Explore's engagement rate was 5% in February or March, Plaintiff and FE 2 would have alleged as much in the SAC after the FAC's dismissal for failing to make that allegation; they do not.  The new allegation from FE 6 that "actual usage did not change over time" (¶ 70) does not connect the dots, as Plaintiff provides no information regarding how "actual usage" is defined or whether FE 6 was measuring it the same way "engagement" or "adoption" was measured.  In any event, FE 6 left before the summer of 2022 (¶ 70), when Plaintiff alleges there was 5% engagement.  Thus, FE 6 offers no insight into whether the alleged June rate was consistent with the engagement rate months earlier.

Plaintiff now alleges, citing FE 2, that Explore engagement did not reach 10% because it

7

was not included in the decks presented to the board of directors, but that it "would have been" if it hit double-digit engagement levels. ¶¶ 47-48, 75. In addition to the fatal flaw that Plaintiff does not allege how FE 2 defined engagement—whether the same as any of the other FEs or as MGI— these allegations still do not establish rates were below 10% in the spring of 2022. Plaintiff provides no basis for the conclusion that if engagement rates—however Plaintiff and FE 2 define them—hit double digits they "would have been" included in the board decks. *See Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447, 462 (S.D.N.Y. 2010) (allegation that information "would have been" in a presentation is "speculative" and "offer[s] nothing concrete and [is] not [an] allegation[] of fact"), *aff'd*, 430 F. App'x 63 (2d Cir. 2011).

Moreover, it is notable that although Plaintiff uses quotes to describe certain FE allegations, none of the allegations from FE 2 surrounding the slide decks and the purported implications for Explore's engagement levels are direct quotes. Given their murky nature and the lack of specific language used by FE 2, the allegations should be discounted and rejected in light of the other pleading failures. *See, e.g.*, *In re Maxwell Techs., Inc. Sec. Litig.*, 18 F. Supp. 3d 1023, 1034 (S.D. Cal. 2014) ("Plaintiff's description of the confidential witness accounts raises serious problems. In reviewing the Complaint's characterization of their statements, it is often unclear what the witness actually said, what the Plaintiff has inferred, and what is commentary by the Plaintiff.").

*Finally*, statements that adoption "has been really strong" (#8) and "adoption levels continue to be high" (#10) are still inactionable puffery (*see also* #3, #4). R&R at 13-14; *Galati v. Commerce Bancorp, Inc.*, 220 Fed. App'x. 97, 102 (3d Cir. 2007) (statements about "dramatic deposit growth" and "strong performance" are inactionable puffery); *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1141-42 (N.D. Cal. 2017) (statements regarding initiatives driving engagement non-actionable puffery).

2.      Defendants Made No Misrepresentations About Coins

Plaintiff claims certain statements regarding the plans for Coins (#2, #5-7, #11, #12-14) were misleading because Coins was not a "viable" product and had been put "on hold" in February of 2022 due to negative user feedback. ¶ 83. But the Court previously found these allegations to be insufficient because the statements regarding plans for Coins were inactionable corporate optimism and not alleged to be false when made in light of MGI's numerous and extensive disclosures regarding Coins and its projected development and effect on revenues. R&R at 13-14. Plaintiff's new allegations do not move the needle.

*First*, Plaintiff cannot escape that before the Class Period, in November 2021, MGI disclosed that Coins was "currently testing," and that "the plan for 2022" was to "build all this out, test it out, learn it, refine it, [and] work out the kinks." Ex. B at 11-12. Then, on the first day of the Class Period, Defendants disclosed that the Company was "not counting on any sort of meaningful contribution to 2022 revenue" from Coins. ¶ 81. As the Court previously found, these disclosures are consistent with the delays and difficulties Tinder is alleged to have experienced with Coins in 2022. R&R at 14. In light of these disclosures, investors could not have been misled, as the total mix of information made clear that Coins was being worked on and would not contribute to revenue in 2022. *See In re NAHC*, 306 F.3d at 1330 (prior filing "rendered immaterial any subsequent misstatement regarding the goodwill of the company . . . because it did not alter the 'total mix of information available'" to investors).

*Second*, the statements regarding the projected timeline for launch and rollout of Coins (#2, #7, #9, #11, #12, #14) are forward-looking.[3] *See* 15 USC § 78u-5(i)(1) ("a statement of the plans

_____

[3]    Plaintiff further does not allege how the December 8, 2022 statement that Coins was "delayed" and "pushed from 2022 to 2023 to give it more time to refined" (#14) was false, as it was consistent with the August 2, 2022 disclosure that MGI was "re-examin[ing]" Coins. ¶ 95.

9

and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer" is forward-looking). As such, the statements are "immunize[d] from liability" under the PSLRA safe harbor because they were "accompanied by meaningful cautionary language." *Bartesch v. Cook*, 941 F. Supp. 2d 501, 506 (D. Del. 2013). MGI's projections for the rollout of Coins were identified as forward-looking statements (Ex. J at 27; Ex. C at 2; Ex. K at 26; Ex. L at 2) and were accompanied by cautionary language that the failure to "keep up with changes in technology and user preferences" "in a timely and cost-effective manner" "could adversely affect our business." Ex. A at 18.

*Third*, Plaintiff still does not adequately allege any statement about Coins was false, as Plaintiff still does not allege that Coins had been abandoned during the Class Period or that it was apparent, when the alleged misrepresentations were made, that Coins could not be released in the summer of 2022. At most, Plaintiff alleges that—in or around February or March 2022—Coins was "on hold." ¶¶ 68-69. But Coins being "on hold" in early 2022 is not inconsistent with MGI's statements in early February—before Plaintiff even alleges Coins was put "on hold"—regarding further testing in Q2 and Q3. Nor is the early 2022 "on hold" allegation inconsistent with MGI's statement in May 2022 (#11) that Coins was on track to launch globally in the summer.

Indeed, while FE 5 claims he was informed Coins was "on hold" in an email, he does not specify who the email was from, how long Coins was purportedly put on hold for, or even whether further engineering work was necessary for a global release. *See Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 142, 147 (3d Cir. 2004) (Plaintiff must "plead with particularity the 'true facts' purporting to show how or why those statements are false," and "sources' basis of knowledge" must be alleged with particularity.). This lack of detail renders FE 5's allegation that his engineering team did not perform work on Coins from February to December 2022 (¶ 68)

10

likewise insufficient, as Plaintiff does not allege that other teams were not working other aspects of Coins during those months.  This is particularly true given Plaintiff's own admission that "[t]here were no bugs or engineering delays associated with Coins," "the quality assurance engineers had tested Coins in 2021 and 'liked it,'" and FE 5's engineering team had already spent "two or three months" making further improvements.  ¶¶ 66-67; *Chubb*, 394 F.3d at 150, 155 (Falsity not alleged where information possessed by former employees "is not inconsistent with [the company's] allegedly false and misleading statements.").

FE 5's alleged belief that it "was not accurate" that Coins was on track to launch globally in the summer of 2022 (¶ 66) also fails since Plaintiff does not allege *when* that projection became inaccurate or that it is based on anything more than FE 5's opinion.  *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 2015 WL 4036179, at *3 (D. Del. Jul. 1, 2015) (rejecting FE allegations "lacking detail and with no corroboration"); *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1194 (9th Cir. 2021) ("the district court correctly held that Plaintiffs failed to plead any facts showing that [CEO] ever accepted those employees' views that the goal was impossible").  Similarly, FE 7—who is described as a Former Localization Program Manager (someone who oversaw translations of the features to different languages) without any alleged role whatsoever related to the development of Coins—provides no basis for the allegation that Coins was "scrapped" before they left in March 2022 (¶ 71).  *Chubb*, 394 F.3d at 146 (FEs must be "described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged.") (citation omitted).

*Fourth*, Plaintiff alleges that it was not accurate in February 2022 that MGI was "seeing some increased engagement and retention" from incentives like Coins (#6) because "testing had demonstrated the opposite."  ¶ 83.  But the purported "testing" occurred in August 2021 (¶ 44),

***nearly half a year before the alleged misrepresentations***.  *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 580-81 (S.D.N.Y. 2014) (allegations regarding issues in the spring of 2012 "do not render the company's statements about its quality control testing—on March 21, 2013—false or misleading"); *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 803 (S.D.N.Y. 2020) ("[T]he FAC is silent as to any basis to believe either that these witnesses have knowledge as to [the company's] current operations or that their statements about past practices apply to the present[.]"); *see also* R&R at 12.

3.     General Statements That Features Were "On Track" Are Inactionable

Plaintiff tries again to allege certain statements that Explore and Coins were "on track" (#9, #11) or "on schedule" (#13) were misleading, but the Court previously dismissed these statements as inactionable corporate puffery.  R&R at 13.  The same determination is warranted here.

These statements are also protected forward-looking statements.  *Institutional Inv. Grp. v. Avaya, Inc.*, 564 F.3d 242, 256 (3d Cir. 2009) (statements that initiatives were "on track" were forward-looking statements protected by PSLRA safe harbor).  These statements were identified as forward-looking (*see supra* at 9-10; *see also* Ex. M at 2) and accompanied by cautionary language (*see supra* at 9-10).

Further, the alleged misstatements about the plans and expectations for the Tinder initiatives (#9, #11, #13) and statements regarding what executives "think" (#8, #12, #14) are statements of opinion.  *See* R&R at 9-10.  These are not actionable here because, as explained above (*see supra* at 6-12), Plaintiff's allegations do not contradict Defendants' representations.  At most, Plaintiff alleges that certain former employees held opinions that differed from Defendants', but "it is the facts known to, and the intent of, the maker of the statements which is ultimately relevant when the Court considers the falsity of statements of belief or opinion."  *Lululemon*, 14 F. Supp. 3d at 580.  Even if the opinions of these unnamed former employees were relevant, they

12

would constitute, at most, "fact[s] cutting the other way," which are insufficient to render an opinion misleading. *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 687 (3d Cir. 2023).

**B.      Plaintiff Fails to Plead a Strong Inference of Scienter**

Plaintiff also fails to allege facts sufficient to give rise to a "strong inference" of scienter, as required by the PSLRA. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007). "To qualify as 'strong' . . . an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.*  Courts must weigh the "plausible, nonculpable explanations for the defendant's conduct" against the "inferences favoring the plaintiff." *Id.* at 324.

**1.      Plaintiff Fails to Plead Conscious Misbehavior or Recklessness**

To establish scienter for forward-looking statements, Plaintiff must allege, with particularity, facts demonstrating Defendants had "actual knowledge" that their statements were false. *Avaya*, 564 F.3d at 274.  For all other statements, scienter may be inferred only where the allegations demonstrate "reckless or conscious behavior." *Martin*, 757 F. App'x at 153.  To establish conscious misbehavior, it is "not enough for plaintiffs to merely allege that defendants 'knew' their statements were fraudulent or that defendants 'must have known' their statements were false." *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004). Recklessness is a similarly high bar, limited to "extreme departure[s] from the standards of ordinary care, and which present[] a danger of misleading buyers or sellers that is either known to [the] defendant or is so obvious that the actor must have been aware of it." *In re Digit. Island Sec. Litig.*, 357 F.3d 322, 332 (3d Cir. 2004).  Plaintiff's allegations do not meet these standards.

***Plaintiff's "at issue" theory of scienter fails.***  Lacking specific scienter allegations for Defendants, Plaintiff resorts to allegations that Defendants "put their knowledge" "at issue" and

13

thus automatically acted with scienter. ¶¶ 102-05. That is not the law. Inferring scienter merely because an executive spoke on the topic of an alleged misstatement would erode the PSLRA's pleading standard and would conflict with numerous judicial decisions dismissing securities cases on scienter grounds even where falsity is found. *See, e.g.*, *Martin*, 757 F. App'x at 153-54. Scienter would be a foregone conclusion in every securities fraud action under Plaintiff's flawed theory.

***Plaintiff has failed to plead Defendants intended to mislead investors regarding Explore.*** The only specific information allegedly conveyed to management was Explore's purportedly low engagement rates in the summer of 2022 (¶ 75), but that was *after* the alleged misstatements concerning Explore, and the information was only allegedly conveyed to Bernard Kim, who is no longer an Individual Defendant.[4] The Court thus previously found that "[t]he amended complaint does not contain any facts suggesting that Defendants knew statements about expectations for Explore were false at the time they were made." R&R at 14.

Plaintiff attempts to bolster its allegations through FE 6, who vaguely asserts there was "pretty widespread transparency in usage" levels for Explore that were "available" to unspecified "executives" and distributed in unidentified "reports." ¶ 70. "Where plaintiffs contend that the defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." *In re NAHC, Inc. Sec. Litig.*, 2001 WL 1241007, at *19 (E.D. Pa. Oct. 17, 2001), *aff'd*, 306 F.3d 1314 (3d Cir. 2002). Here, Plaintiff both fails to identify the reports containing contrary information *and* the "executives" who allegedly had access to this information.

---

[4] Plaintiff also cannot allege scienter through opinions of Tinder employees that Explore was a "dud." *See* R&R at 14; *Lululemon*, 14 F. Supp. 3d at 581 (FEs "thoughts and opinions as to various quality issues . . . do not establish what specific contradictory information the makers of the statements had[.]").

14

Plaintiff does not even allege that the "executives" were MGI executives rather than Tinder.[5]

The allegations attributed to FE 2 regarding purported board decks also do not demonstrate that Dubey or Swidler intentionally made misstatements regarding Explore's engagement or adoption levels, particularly given the lack of any universal definition of "engagement." *See supra* at 6-8. Simply, Plaintiff has not provided a single allegation that shows that the actual figures disclosed by Defendants were contradicted by figures provided to them. At most, Plaintiff alleges that *different definitions of engagement resulted in different engagement metrics*.

***Plaintiff has failed to plead Defendants intended to mislead investors regarding Coins.*** The SAC lacks allegations suggesting Defendants knew statements about Coins were false. Plaintiff asserts a new allegation from FE 2 that Dubey and Swidler "would have needed to" sign off on the shelving of Coins. ¶ 58. But "allegations that information was the sort of data that would have been reviewed by the Individual Defendants are too speculative to give rise to a strong inference of scienter." *Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 336 (S.D.N.Y. 2011).

Similarly as weak are the paraphrased allegations of FE 5 regarding the "all hands" meeting on some unspecified date in March or April of 2022 during which attendees were allegedly told Coins was being put "on hold." ¶ 69. As explained above, there is no inherent inconsistency between Coins being put "on hold" in "March or April" and launching globally in the summer. Being put "on hold" is not the same as being abandoned. Further, the imprecise allegations of a meeting on some unspecified date are too vague to be credited and also fail because this "all hands" meeting is oddly not corroborated by any other FE cited by Plaintiff who presumably would have attended the "company-wide" all hands meeting (¶ 69). *Martin v. GNC Holdings, Inc.*, 2017 WL

---

[5]    Nor does Plaintiff explain how FE 6—a Tinder employee—could know what information MGI executives, such as Dubey or Swidler, had access to.

3974002, at *14 (W.D. Pa. Sept. 8, 2017) (discounting allegation by FE where "there are no allegations to corroborate the [FE]'s description of the GNC/vendor meetings"), *aff'd*, 757 F. App'x 151 (3d Cir. 2018).  In any event, such allegations cannot establish scienter for statements pre-dating the purported meeting.

   ***Plaintiff has not alleged sufficient facts to plead a core operations theory of scienter.*** Plaintiff's allegations that Tinder was MGI's "most important brand" (¶ 102) cannot plead a core operations theory, which is insufficient to allege scienter on its own.  *See Rahman*, 736 F.3d at 247.  A plaintiff may be "entitled to a 'core operations inference'" where a complaint alleges "that a defendant made misstatements concerning the 'core matters' of central importance to a company" and sets forth "additional allegation[s] of specific information conveyed to management and related to the fraud."  *Martin*, 757 F. App'x. at 155.  Plaintiff is not entitled to this inference.

   *First*, Plaintiff's conclusory allegation of ***Tinder's*** importance to MGI (¶ 102) is insufficient because Plaintiff must demonstrate that "the relevant fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter."  *Percoco v. Deckers Outdoor Corp.*, 2013 WL 3584370, at *5 (D. Del. July 8, 2013).  The importance of Tinder to MGI as a portfolio company does not justify a jump to the conclusion that Explore or Coins were "core" to MGI.  Allegations that Explore "got a disproportionate share of executive-level attention because it was new" and that Explore was allocated "about a third or a quarter of resourcing" within "Core product" (¶ 70) are likewise insufficient, including because Plaintiff does not identify which executives gave Explore attention (those at MGI or Tinder) nor what "Core product" is.  *See Bd. of Trs. of City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 873 (S.D.N.Y. 2011) ("[T]here is no cognizable limit to the scope of the 'core operations' inference suggested by Plaintiffs, which would potentially sweep in knowledge of all

16

customer contract terms, price levels, delivery schedules, and other operational details [within company's primary division]."), *aff'd*, 475 F. App'x 353 (2d Cir. 2012).

*Second*, the doctrine is inapplicable absent egregiously false statements in response to pointed questions about the alleged fraud. *See, e.g.*, *Avaya*, 564 F.3d at 269-70 (core operations inference where CFO "explicitly denied the existence of [pricing] discounting in response to repeated questions about pricing from analysts" and where plaintiffs alleged that defendants engaged in massive discounting on a large scale during the class period); *Roofer's Pension Fund v. Papa*, 2018 WL 3601229, at *21-22 (D.N.J. July 27, 2018) (allegations "narrowly surpassed the bar" where "high-ranking executives allegedly involved in the pricing decisions at issue" represented, in response to "pointed analyst questions," that pricing was impacted by competitive forces and where plaintiffs alleged a price-fixing scheme for which the DOJ "raided [the company's] offices as part of a criminal price-fixing probe").

*Third*, as explained above (*supra* at 13-16), Plaintiff sets forth no "specific information conveyed to management" that contradicted Defendants' public statements. *Martin*, 757 F. App'x at 155. Without such specific information, Plaintiff fails to plead a core operations theory of scienter. Having alleged neither that a single egregiously false statement was the subject of a pointed question, nor a single piece of undisclosed information provided to Defendants that contradicted their statements, Plaintiff fails to plead recklessness or conscious misbehavior.

### 2. Plaintiff Fails to Plead Motive and Opportunity

Motive and opportunity cannot "serve as an independent route to scienter." *Avaya*, 564 F.3d at 245. At most, they can bolster allegations where there is "a concrete and personal benefit to the individual defendants resulting from [the alleged] fraud." *Bartesch*, 941 F. Supp. 2d at 511.

***Motive to preserve revenue is insufficient.*** Allegations concerning Defendants' desire to preserve Tinder as MGI's main revenue source (¶¶ 106-07) fail because allegations that executives

had incentive to "improve the lot of their companies" describe goals common to every executive. *Rahman*, 736 F.3d at 246 n. 13; *see also Nat'l Junior Baseball League v. Pharmanet Dev. Grp.*, 720 F. Supp. 2d 517, 552 (D.N.J. 2010).

***Stock-based and performance-based compensation is insufficient.*** Allegations regarding Defendants' compensation (¶¶ 108-113) fail because motive allegations based "merely on the attenuated connection between [the] nature of Defendants' compensation and the company's [business goals]" are insufficient. *Wilson v. Bernstock*, 195 F. Supp. 2d 619, 638 (D.N.J. 2002).

***Defendants did not sell stock.*** Plaintiff does not allege that Defendants sold stock during the Class Period, which negates scienter. *E.g.*, *Pharmanet*, 720 F. Supp. 2d at 550. To the contrary, MGI repurchased shares following the release of Q1 2022 earnings (Ex. K at 14, Ex. M at 13), which further undermines scienter "because it would make no economic sense for a company to buy back its stock at a price it knows to be inflated." *Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*, 336 F. Supp. 3d 196, 225 (S.D.N.Y. 2018), *aff'd*, 779 F. App'x 69 (2d Cir. 2019).[6]

### 3.    Plaintiff's Scienter Theory Makes No Sense

The non-culpable opposing inference that Defendants were cautiously optimistic about the initiatives and, as often happens, certain of these initiatives did not turn out as favorably as Defendants believed, is more compelling than any inference of fraudulent intent. The non-fraudulent inference is confirmed by Defendants repeatedly tempering expectations regarding Coins and Explore. *See, e.g.*, *Fan v. StoneMor Partners LP*, 927 F.3d 710, 718 (3d Cir. 2019) (appraising investors of developing risk in strategy supported non-fraudulent inference); *In re*

---

[6]    Plaintiff has also removed MGI CEO Bernard Kim as a Defendant, perhaps in part because Kim purchased more than $1 million of MGI stock during the Class Period (Ex. N), which is inconsistent with fraud because "a defendant would not sink his own ship." *Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 396 (D. Del. 2016).

18

*Loral Space & Comms. Ltd. Sec. Litig.*, 2004 WL 376442, at *10 (S.D.N.Y. Feb. 27, 2004) (no inference of scienter where "disclosures necessarily tempered the defendants' optimistic projections").

In contrast to the logical non-fraudulent explanation, Plaintiff's scienter theory is illogical. According to Plaintiff, between February and May 2022, Defendants concealed "known issues" related to the Tinder—while selling none of their own shares—only to disclose that their revenue expectations "for the second half of the year are below our original expectations" in Q2 2022 (¶ 94).

And, even more illogically, according to Plaintiff, Defendants represented in May that Coins would be released in the summer of 2022 (¶¶ 9, 11) despite already deciding not to release it, guaranteeing their "misstatements" would be revealed imminently. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020) (scienter theory "does not make a whole lot of sense" where defendants knew alleged misstatements "would eventually" come to light and yet did not seek to profit from the alleged misstatements). Because Plaintiff's theory "does not make a whole lot of sense," it cannot "be found cogent or at least as compelling" as the non-culpable inference. *In re Grand Canyon Educ., Inc. Sec. Litig.*, 2021 WL 3491779, at *17 (D. Del. Aug. 9, 2021).

### C.    Plaintiff Fails to Plead Loss Causation

Plaintiff must show a "causal connection between the material misrepresentation and the loss." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). Plaintiff alleges four purported correct disclosures, but none "reveal[ed] some then-undisclosed fact with regard to the specific misrepresentations," as is required to plead loss causation. *Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d Cir. 2013) (emphasis omitted).

***August 2, 2022 Letter to Shareholders:***  The August 2 letter disclosed that the Company projected Tinder's growth would slow in the second half of the year, that the company "had not been able to realize the monetization successes" that it typically delivers, and that it was "re-

examining" Coins.  ¶¶ 94-95.  None of this information revealed any prior alleged misstatements. MGI had already announced that Coins would not be a meaningful revenue item in 2022.  ¶ 81.  In fact, during the earnings call the following day, Swidler clarified the reduced projections were caused by a series of "less sexy, less notable initiatives," not Coins or Explore.  Ex. F at 10.

*August 3, 2022 Earnings Call:*   The August 3 earnings call disclosed that Tinder "did not deliver on its product roadmap for the first half of the year."  ¶ 97.  This revealed no new information after the August 2 letter.  MGI's CEO stated that the Company had not succeeded in monetizing Explore (¶ 97), but there was no disclosure that those monetization issues were related to Explore engagement (¶ 94).  To the contrary, MGI's CEO—in a statement *unchallenged by Plaintiff*—disclosed that Explore was "a strong gateway with high engagement."  Ex. F at 8.

*January 31, 2023 Letter to Shareholders:*   The January 31 letter disclosed "weaker-than-expected product execution at Tinder, the effects of which became more pronounced as the year progressed" and omitted Explore from the 2023 product roadmap.  ¶ 98.  But the Company had already disclosed reduced projections for the second half of the year back in August 2022.  ¶ 94. As the Court previously found (R&R at 15), this disclosure merely disclosed the expected revenue shortfall caused by the poor product execution previously announced.  In fact, the Q4 financials were in-line with the projections MGI issues months earlier.  *Compare* Ex. H at 11 *with* Ex. G at 11.  Further, the disclosure did not attribute the disappointing results to Coins or Explore.

*February 1, 2023 Earnings Call:*   During the February 1 earnings call, the Company stated it "missed execution and lack of delivery of initiatives, not having hit product roadmap and delivered as we expected in the first half of the year."  ¶  99.  This had been disclosed months earlier (¶ 97) and is unrelated to Coins or Explore.

VI.    **CONCLUSION**

For the reasons discussed herein, Plaintiff's SAC should be dismissed with prejudice.

OF COUNSEL:

Michael Carlinsky
Jesse Bernstein
Brenna Nelinson
Leigha Empson
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
michaelcarlinsky@quinnemanuel.com
jessebernstein@quinnemanuel.com
brennanelinson@quinnemanuel.com
leighaempson@quinnemanuel.com

September 18, 2024

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

*/s/ Lauren K. Neal*
Lauren K. Neal (#5940)
Jacob M. Perrone (#7250)
1201 North Market Street
Wilmington Delaware 19801
(302) 658-9200
lneal@morrisnichols.com
jperrone@morrisnichols.com

*Attorneys for Defendants*

21