## UNITED STATES DISTRICT COURT
### DISTRICT OF DELAWARE

|  |  |
|---|---|
| LEOPOLD RIOLA BARDAJI, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | C.A. No. 1:23-cv-0245-MN |
| v. | |
| MATCH GROUP, INC., SHARMISTHA DUBEY, and GARY SWIDLER, | |
| Defendants. | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT

**TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ........................................................................1

II.     PLAINTIFF FAILS TO STATE A CLAIM UNDER THE EXCHANGE ACT ................2

        A.     Plaintiff Fails to Plead a Material Misrepresentation ...............................2

               1.     Defendants Made No Misrepresentations About Explore ..........................2

               2.     Defendants Made No Misrepresentations About Coins............................4

               3.     General Statements That Features Were "On Track" Are
                      Inactionable..................................................................................5

        B.     Plaintiff Fails to Plead a Strong Inference of Scienter............................6

        C.     Plaintiff Fails to Plead Loss Causation ...............................................9

III.    CONCLUSION...........................................................................................10

i

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*In re Advance Auto Parts, Inc. Sec. Litig.*,
    2020 WL 599543 (D. Del. Feb. 7, 2020) ...................................................................................5

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004) ...................................................................................................5

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
    543 F. App'x 72 (2d Cir. 2013) ............................................................................................10

*Institutional Invs. Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009)...............................................................................................6, 9

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001).....................................................................................................7

*Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*,
    724 F. Supp. 2d 447 (S.D.N.Y. 2010)......................................................................................8

*Martin v. GNC Holdings, Inc.*,
    757 F. App'x 151 (3d Cir. 2018) .............................................................................................9

*Medina v. Tremor Video, Inc.*,
    2015 WL 1000011 (S.D.N.Y. Mar. 5, 2015) ...........................................................................6

*In re NAHC, Inc. Sec. Litig.*,
    2001 WL 1241007 (E.D. Pa. Oct. 17, 2001).............................................................................8

*In re Qiwi plc Sec. Litig.*,
    2023 WL 7283619 (E.D.N.Y. Nov. 3, 2023)........................................................................8, 9

*Rahman v. Kid Brands, Inc.*,
    736 F.3d 237 (3d Cir. 2013)....................................................................................................9

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
    351 F. Supp. 3d 874 (E.D. Pa. 2018) .......................................................................................8

*Shenwick v. Twitter*,
    282 F. Supp. 3d 1115 (N.D. Cal. 2017) ...................................................................................2

*Tung v. Bristol-Myers Squibb Co.*,
    2020 WL 5849220 (S.D.N.Y. Sept. 30, 2020).........................................................................2

ii

*Tyler v. Liz Claiborne, Inc.*,
    814 F. Supp. 2d 323 (S.D.N.Y. 2011)...................................................................................8

*In re Urb. Outfitters, Inc. Sec. Litig.*,
    103 F. Supp. 3d 635 (E.D. Pa. 2015) ...................................................................................9

Defendants[1] respectfully submit this Reply Brief in Support of Their Motion to Dismiss the Second Amended Class Action Complaint.

## I.      PRELIMINARY STATEMENT

Plaintiff's Answering Brief (D.I. 66, "Opposition" or "Opp.") confirms Plaintiff's theory of fraud does not make sense.  Plaintiff has no response to MGI's repeated disclosures—at the very beginning of the Class Period and in the middle of the Class Period—that Coins would not be a revenue item for 2022 before MGI reduced revenue projections without selling a single share of stock.  Not only does Plaintiff's theory as a whole fail, Plaintiff fails to adequately allege each element of a securities fraud claim.

*First*, the Opposition strains to argue that Defendants made any misstatements about Explore or Coins.  Plaintiff still cannot allege any Explore engagement metrics reported by MGI were false, especially because Plaintiff still does not identify what metric was purportedly misrepresented.  Plaintiff's allegations regarding Coins also fail in light of MGI's disclosures regarding Coins' slow rollout and lack of expected contribution to revenue, and because Plaintiff has not alleged with particularity facts showing Coins was permanently shelved while MGI made statements about its planned rollout.  And, like in Plaintiff's first complaint, many of the alleged misstatements are inactionable puffery or protected by the PSLRA safe harbor.

*Second*, Plaintiff's Opposition exposes the gaping holes in Plaintiff's scienter allegations.  Plaintiff concedes that it has not adequately alleged any motive for its single quarter "fraud" and that MGI's buyback of stock during the Class Period undermines any allegations of scienter.  Plaintiff cannot make up for its failure to allege motive with other allegations, as the Opposition

_____

[1]  Capitalized terms not defined herein have the meanings attributed to them in Defendants' Opening Brief in Support of Their Motion to Dismiss (D.I. 64, "Motion" or Mot.").

fails to articulate any information received by any Defendant that was contrary to Defendants' public statements, because such allegations are absent from the SAC.

*Third*, Plaintiff's theory of loss causation also falls flat. None of the corrective disclosures revealed any prior misstatements, and several did not reveal information related to Explore or Coins at all. The revelation of financial results consistent with prior disclosures and projections does not constitute a corrective disclosure under the securities laws.

Plaintiff's Opposition cannot cure the fatal defects in the SAC. The SAC should thus be dismissed in its entirety, with prejudice.

## II.     PLAINTIFF FAILS TO STATE A CLAIM UNDER THE EXCHANGE ACT

### A.     Plaintiff Fails to Plead a Material Misrepresentation

#### 1.     Defendants Made No Misrepresentations About Explore

Plaintiff cannot escape its failure to allege any materially misleading statements regarding Explore's engagement rates (#1, #3, #4, #8, #10) because Plaintiff fails to specify what metrics it or its cited FEs are using when discussing "engagement." Mot. 6-7. Indeed, Plaintiff concedes "engagement" is a "fuzzy" metric without an industry standard. Opp. 14. This dooms Plaintiff's claim. *See Tung v. Bristol-Myers Squibb Co.*, 2020 WL 5849220, at *7 (S.D.N.Y. Sept. 30, 2020) (without "an industry standard definition . . . or indication that Defendants themselves agreed with Lead Plaintiffs' supposed definition before speaking, the statements are not actionable.").[2]

Plaintiff's argument that "user engagement never exceeded single digit percentages," and thus MGI's disclosures that two-thirds of users were engaging with Explore were false (Opp. 14-

---

[2]   *Shenwick v. Twitter, Inc.* (Opp. 15), is inapposite on this point, because there, plaintiff alleged an undisclosed metric was the company's "primary metric," and the metric defendants actually disclosed was "moving in the opposite direction" from the "primary metric." 282 F. Supp. 3d 1115, 1142-43 (N.D. Cal. 2017). Here, Plaintiff does not allege what metric(s) MGI uses to track user engagement or that the metric disclosed was inconsistent with that.

15) falls flat.  The disclosure that two-thirds of users were engaging with Explore is followed by a chart specifically defining that engagement figure as "% of Active Users Adoption of Explore **Since Launch**."  Ex. J at 7 (emphasis added).  Plaintiff nowhere alleges that those figures inaccurately reported the percentages of users adopting Explore since launch (Mot. 7), and Plaintiff's argument that the adoption metric was "meaningless" (Opp. 15) is belied by the specific definition of the metric provided.  Plaintiff attempts a sleight of hand by comparing these figures to an undefined 5% "engagement metric" from June 2022, which could refer to another metric like daily active users, weekly active users, or any other potential method of measuring "engagement," assuming it relates to any metric at all.  Mot. 7.  Not a single FE alleges that the 5% figure reflected the percentage of active users that had adopted Explore since launch, which is all MGI represented.

In any event, as the Court previously recognized, that 5% metric is from months after the alleged misstatements and thus cannot render them false.  Mot. 7; R&R at 14.  Plaintiff argues that FE 6's purported statement that "actual usage did not change over time" allows Plaintiff the inference that some unspecified engagement metric was 5% at the time of the alleged misstatements (Opp. 15), but FE 6 is not alleged to have stated that engagement was at 5% at the time of any misstatement.  Plaintiff also has no response to the facts that (i) FE 6 was not at the Company in June 2022 (¶ 70) at the time of the purported 5% engagement rate and thus cannot speak to that rate; and (ii) neither FE 6 nor Plaintiff explains what "actual usage" means, let alone how it compared to the engagement/adoption rates the Company disclosed.  Mot. 7.

Plaintiff also does not provide factual support for its argument that "[i]f user engagement had reached double digits, FE 2 said, Dubey and Swidler would have shared it with the Board." Opp. 15.  This statement is entirely speculative (Mot. 7-8), and despite purportedly having access to a former employee familiar with engagement rates (FE 2), Plaintiff does not allege that the

3

figures regarding adoption were inaccurate—which Plaintiff would allege if it could—nor does FE 2 specify what engagement metric he is referring to.[3]

Finally, Plaintiff concedes that statements that adoption "has been really strong" (#8) and "adoption levels continue to be high" (#10) are still inactionable puffery (Mot. 8; *see also* #3, #4) and have already been dismissed by the Court.  R&R at 13-14.

2.      Defendants Made No Misrepresentations About Coins

Plaintiff cannot sufficiently plead that MGI's statements about Coins (#2, #5-7, #11-14) were misleading in light of MGI's transparent disclosures from the beginning of the Class Period that the Company was "not counting on any sort of meaningful contribution to 2022 revenue" from Coins (¶ 81) and that it was "really not a 2022 revenue item" (Ex. D at 6).  Plaintiff's attempt (Opp. 2) to argue that these statements did not disclose that there would be *zero* revenue from Coins is inconsequential; MGI made clear to investors that Coins would not be a 2022 revenue item.  In light of these disclosures, the Company's projections for Coins for 2022 could not have been materially misleading.  Mot. 9.  The Opposition does not grapple with this reality.

Plaintiff's allegations also fail because the purported facts provided by the FEs are not adequately pleaded and/or are not inconsistent with MGI's disclosures.  Plaintiff's heavy reliance on the purported "all hands" meeting (Opp. 10) in an unspecified month in early 2022 cannot establish that Coins had been definitively scrapped, as no other FE corroborates the occurrence of this "all hands" meeting (Mot. 15-16), and even crediting FE 5's allegations, a feature being "on hold" early in the year is not inconsistent with the feature launching globally months later (Mot. 10).  Nor is FE 5's allegation that he did not perform further work on Coins relevant, as

---

[3]   FE 4 purportedly referenced daily engagement (¶ 64), but MGI is not alleged to have disclosed daily engagement rates.  The silence regarding what engagement metric the other FEs reference is notable given Defendants raised this issue in the prior briefing.  *E.g.*, D.I. 45 at 5.

4

Plaintiff admits "there were no bugs or engineering delays associated with Coins" (¶ 93), which shows other teams (marketing, etc.) could still have been working on the Coins launch.  Further, Plaintiff concedes that FE 7 had no role in Coins, merely oversaw the translation of features to other languages, and provided no factual basis for his claim that Coins was "scrapped" in early 2022.  Mot. 11; *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 146 (3d Cir. 2004).

Plaintiff tries to manufacture a claim out of other statements related to Coins, like MGI was "seeing some increased engagement and retention" from incentives like Coins (#6), arguing that statement was false because Coins caused retention to decline.  Opp. 10-11.  But Plaintiff ignores the fact that MGI's "testing," which allegedly showed reduced user retention, occurred six months before the relevant alleged misstatements.  Mot. 11-12.  Plaintiff also fails to explain why MGI's statement in December 2022 that Coins was delayed to 2023 "to give it more time to be refined" was false.  Opp. 13-14.  Allegations that two FEs were not working on Coins in October and December (Opp. 14) do not establish that Coins was not projected to be launched a year later.

Finally, statements regarding the projected launch for Coins (#2, #7, #9, #11-14) were forward-looking and accompanied by cautionary language.  Mot. 9-10; *see infra* at 5-6.

### 3.    General Statements That Features Were "On Track" Are Inactionable

Plaintiff argues that certain statements that Explore and Coins were "on track" (#9, #11, #13) are actionable (Opp. 12-13), despite the Court's prior dismissal of those statements as puffery.  R&R at 13; Mot. 12.  Plaintiff's authority does not require the Court to revise its prior decision regarding these statements, as such authority involved much more concrete statements regarding sales, customer momentum, and operating leverage.  *See* Opp. 12 (citing *In re Advance Auto Parts, Inc. Sec. Litig.*, 2020 WL 599543, at *4 & n.2 (D. Del. Feb. 7, 2020)).

Plaintiff also argues these statements and projections are not forward-looking and that the cautionary language MGI provided was insufficient.  Opp. 12-13.  Plaintiff is wrong.  The Third

Circuit has explicitly held that statements that an initiative is "on track" are forward-looking. *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 255-56 (3d Cir. 2009); Mot. 12. Regarding the cautionary language, Plaintiff alleges that Coins was delayed due to negative user reaction (¶ 83), which is precisely what MGI warned of when it told investors that the failure to "keep up with changes in technology and user preferences" "in a timely and cost-effective manner" "could adversely affect our business." Ex. A at 18. This cautionary language is sufficient. *See Medina v. Tremor Video, Inc.*, 2015 WL 1000011, at *4 (S.D.N.Y. Mar. 5, 2015). In any event, Plaintiff has failed to allege any Defendant had actual knowledge that any statement was false or misleading when made, which independently protects forward-looking statements. *See infra* at 7-9.

Finally, Plaintiff concedes that the alleged misstatements about the plans and expectations for the Tinder initiatives (#9, #11, #13) and statements regarding what executives "think" (#8, #12, #14) are statements of opinion. Mot. 12-13; R&R at 9-10.

### B.    Plaintiff Fails to Plead a Strong Inference of Scienter

Plaintiff all but ignores each argument in Defendants' Motion, instead relying on general allegations regarding the importance of Tinder to MGI and unspecified data and reports. But Plaintiff has not alleged facts establishing a strong inference that any Defendant received information contrary to their public statements and intended to deceive investors, let alone one as plausible as any non-fraudulent inference. Mot. 13-19. Further, Plaintiff ignores that to establish scienter for forward-looking statements, Plaintiff must allege, with particularity, facts demonstrating Defendants had ***actual knowledge*** that their statements were false. Mot. 13.

***Plaintiff's Theory Is Nonsensical:*** It is unsurprising that Plaintiff cannot plead scienter: Plaintiff's theory of fraud—that Defendants allegedly concealed issues with Coins and Explore for a single quarter, without selling shares—makes no sense. Plaintiff's only attempt to overcome its illogical theory is an argument that Defendants were merely hoping that other initiatives at Tinder

6

could overshadow the "issues" with Explore and Coins before the truth was revealed. Opp. 19. However, if that were the case, it would make no sense for Defendants to disclose reduced projections for the second half of the year in August 2022, *i.e.*, before the truth was revealed (¶ 94). Nor would it make any sense for the Company to disclose that it was "not counting on any sort of meaningful contribution to 2022 revenue" from Coins on the first day of the Class Period (¶ 81) or that Coins was "really not a 2022 revenue item" in June 2022 (Ex. D at 6). The non-culpable opposing inference that Defendants were optimistic about Tinder's initiatives—which turned out to be not as successful as anticipated, which MGI disclosed to investors mid-year—is more compelling than any inference of fraudulent intent.

**Motive and Opportunity:** Plaintiff concedes it has not alleged motive or opportunity. Mot. 17-18. The allegations of scienter thus "must be correspondingly greater." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (citation omitted). Not only did Plaintiff fail to allege any cognizable motive, but Plaintiff has no response to the fact that MGI repurchased shares following the release of Q1 2022 earnings, which undermines scienter. Mot. 18.

**Explore:** Plaintiff has not alleged any fact demonstrating Defendants received Explore engagement figures that contradicted those disclosed to investors. Instead, Plaintiff argues that "metrics" and "user engagement data" were circulated "in monthly comparative intel reports sent by FE 2 to every MGI executive (including Dubey and Swidler)." Opp. 18. But the cited paragraphs do not allege that Dubey and Swidler received reports reflecting Explore engagement rates, let alone what those rates were or when.[4] Indeed, Plaintiff simultaneously alleges that Kim needed to ask for the engagement metrics in June 2022 (¶ 49), undermining any inference that the

---

[4] *E.g.*, ¶ 52 (user engagement figures were "available" to unspecified persons); ¶ 70 (general allegations that "usage" levels were available to unidentified executives and distributed in unspecific "reports").

executives had access to such information. Plaintiff's remaining general allegations that "metrics" showed a "red flag" regarding "retention" (Opp. 18) do not identify what specific contrary information any Defendant had, when, or how it contradicted public statements regarding Explore. *In re NAHC, Inc. Sec. Litig.*, 2001 WL 1241007, at \*19 (E.D. Pa. Oct. 17, 2001), *aff'd*, 306 F.3d 1314 (3d Cir. 2002). Likewise insufficient are allegations that Explore "got a disproportionate share of executive-level attention" (Opp. 18-19) without alleging which executives (at Tinder or MGI) were concentrating on this information and what contrary information they had.

Plaintiff argues the fact that Dubey and Swidler made statements regarding engagement levels shows they had information regarding specific engagement metrics. Opp. 19. Not only does this fail to establish either Defendant had access to **contrary** information, but if Plaintiff could plead scienter this way, it would be a foregone conclusion in every case. *See, e.g.*, *In re Qiwi plc Sec. Litig.*, 2023 WL 7283619, at \*18 (E.D.N.Y. Nov. 3, 2023).[5]

***Coins:*** Plaintiff's arguments regarding Coins fare no better. Plaintiff insists that Dubey and Swidler "would have needed to" sign off on shelving Coins in February 2022 (Opp. 18), but allegations that they "would have" had information are insufficient to allege a strong inference of scienter. Mot. 15; *see also, e.g.*, *Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 336 (S.D.N.Y. 2011). Nor does FE 2 allege he was aware of Dubey or Swidler actually shelving Coins, despite allegedly interacting with them in bi-weekly meetings. ¶ 47. Plaintiff also cannot rely on general allegations that Defendants received "continuous progress reports." Opp. 18. "[I]f 'detailed' reports were circulated regularly among [MGI's] senior management, [the former employees] should be able to identify the names and contents of these documents." *Loc. No. 38 Int'l Bhd. of*

---

[5] *SEB Investment Management AB v. Endo International, PLC* (Opp. 19) is inapposite, as there, defendants were alleged to have had access to specific contrary information about a core operation of the business. 351 F. Supp. 3d 874, 906-07 (E.D. Pa. 2018).

*Elec. Workers Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447, 462 (S.D.N.Y. 2010).

Plaintiff's allegations regarding the alleged "all hands" meeting at some point in March or April 2022 also do not suffice. *See supra* at 4-5. Even assuming these allegations were specific enough—they are not—a feature being "on hold" in March or April is not inconsistent with a projected global launch in the summer. Mot. 15-16.

*Core Operations:* Plaintiff's Opposition repeats the allegation that Tinder accounted for over 50% of MGI's revenue (Opp. 17), but allegations that Tinder was MGI's "most important brand" (*id.*) cannot plead a core operations theory. That Tinder was important to MGI and Explore was important to Tinder does not establish that Explore was a "core operation" of MGI. *See Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 240, 247 (3d Cir. 2013). Nor does Plaintiff even argue that Coins was core to Tinder, let alone MGI. Opp. 17. Plaintiff also ignores that it cannot pursue a core operations theory here, where there were not egregiously false statements in response to pointed questions regarding the alleged fraud, and Plaintiff does not set forth "specific information conveyed to management" that contradicted Defendants' public statements. Mot. 17 (citing *Martin v. GNC Holdings, Inc.*, 757 F. App'x 151, 155 (3d Cir. 2018)).[6] Plaintiff attempts to describe this "specific information" by alleging that Dubey met weekly with the CEO of each MGI portfolio company (Opp. 17), but such allegations do not identify what specific information Dubey learned in those meetings or when. In any event, the core operations doctrine alone is insufficient to allege scienter. *In re Qiwi*, 2023 WL 7283619, at *19; *see also Avaya*, 564 F.3d at 268-69.

### C.     Plaintiff Fails to Plead Loss Causation

Not a single purported corrective disclosure "reveal[ed] some then-undisclosed fact with

---

[6]   Plaintiff's inapposite authority (Opp. 17) involved misstatements made in response to pointed questions. *In re Urb. Outfitters, Inc. Sec. Litig.*, 103 F. Supp. 3d 635, 653 (E.D. Pa. 2015).

regard to the specific misrepresentations," as is required to plead loss causation. *Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d Cir. 2013) (emphasis and citation omitted); Mot. 19-20. Plaintiff's Opposition (19-20) stretches the disclosures beyond their contents and fails to connect them to the alleged misstatements.

*August 2, 2022 Letter to Shareholders:* Plaintiff describes this disclosure as revealing "'disappointing execution on . . . new product initiatives'—*i.e., Explore and Coins*." Opp. 19 (emphasis added). But MGI explicitly attributed the "disappointing execution" to other "less sexy, less notable initiatives." Ex. F at 10. Plaintiff has no allegations contradicting that disclosure.

*August 3, 2022 Earnings Call:* MGI's disclosure during this call that Tinder "did not deliver on its product roadmap for the first half of the year" (¶ 97) revealed no new information to the market related to the alleged fraud. The Company disclosed that it had not succeeded in monetizing Explore (¶ 97), but Plaintiff does not identify any alleged misrepresentations concerning "monetizing" Explore. Nor can Plaintiff connect the dots between monetization and Explore engagement (¶ 94), which was still described as "strong" (¶ 97).

*January 31, 2023 Letter to Shareholders and February 1, 2023 Earnings Call:* MGI's disclosure that Tinder experienced "weaker-than-expected product execution" as a result of it "not having hit product roadmap . . . as we expected in the first half of the year" (¶ 99) was not corrective. The Company had already disclosed reduced projections as a result of poor execution in August 2022 (¶¶ 94, 97), and the financial results were in line with the projections MGI issued in November 2022. Mot. 20. Indeed, the Court already found that the expected revenue shortfall was simply the materialization of the previously announced weakness. R&R at 15.

III. **CONCLUSION**

For the reasons discussed herein, Plaintiff's SAC should be dismissed with prejudice.

10

OF COUNSEL:

Michael Carlinsky
Jesse Bernstein
Brenna Nelinson
Leigha Empson
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
michaelcarlinsky@quinnemanuel.com
jessebernstein@quinnemanuel.com
brennanelinson@quinnemanuel.com
leighaempson@quinnemanuel.com

November 4, 2024

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

*/s/ Lauren K. Neal*
Lauren K. Neal (#5940)
Jacob M. Perrone (#7250)
1201 North Market Street
Wilmington Delaware 19801
(302) 658-9200
lneal@morrisnichols.com
jperrone@morrisnichols.com


*Attorneys for Defendants*

11